530 S.E.2d 132

STATE FARM FIRE AND CASUALTY CO., Respondent,

v.

Tuamafa BARRETT and James Kratzer, Appellants.

No. 3151.

Court of Appeals of South Carolina.

Heard Feb. 10, 2000.

Decided April 10, 2000.

2

Thomas J. Rubillo, of Georgetown; Lawrence E. Richter, Jr., and Michael W. Sautter, both of The Richter Law Firm, of Mt. Pleasant, for appellants.

Robert A. McKenzie and Robert M. Cook, II, both of McDonald, McKenzie, Rubin, Miller & Lybrand, of Columbia, for respondent.

4

PER CURIAM:

In this insurance case, State Farm Fire and Casualty Company (State Farm) brought a declaratory judgment action against Tuamafa Barrett (Barrett) and James Kratzer (Kratzer) to determine its rights, duties, and responsibilities under a homeowner's policy issued to Kratzer. The trial court concluded the policy did not provide coverage for Barrett's claims against Kratzer. Barrett and Kratzer appeal. We affirm.

## FACTS

Barrett and Kratzer worked for Mack Trucks, Inc. (Mack) in the Winnsboro, South Carolina plant. Kratzer also held a position with the United Auto Workers Union Local 5841(UAW). State Farm insured Kratzer under a standard homeowner's policy.

Mack and UAW sponsored a sexual harassment seminar beginning Monday, February 6, 1995. All Mack employees who attended the seminar stayed at the Fairfield Inn in Morrow, Georgia, the location of the seminar. Mack and UAW paid for the employees's lodging and transportation.

On the Sunday before the seminar began, Barrett flew from Columbia, South Carolina to Atlanta, Georgia. She arrived in Morrow on Sunday afternoon and checked into the Fairfield Inn. She went to dinner with two co-workers and then retired to her room.

Kratzer also arrived in Morrow on Sunday. When he arrived, Kratzer went to a restaurant and consumed several drinks. Kratzer continued to drink all day Sunday and into the night. That evening he attended a meal hosted by Mack and UAW.

On Sunday night, at approximately 11:20 p.m., Barrett received a phone call from Kratzer asking if he could come up to her room. Barrett told Kratzer not to come and that she would see him in the morning. At approximately 11:30 p.m., Kratzer came to Barrett's hotel room against her wishes and began to make sexually explicit comments in an attempt to convince her to have sex with him. In addition, he tried to

kiss Barrett and rubbed her legs. Barrett left her room to get away from Kratzer, but he followed her to the hotel lobby.

After Barrett returned to her room, Kratzer again called, claiming he had left his key there. Barrett took Kratzer's key to the lobby. Kratzer, after getting his key from Barrett, followed her back to her room and continued his offensive behavior towards her. Kratzer finally left Barrett's room at approximately 1:45 a.m.

The following day, Barrett, crying and upset, reported the incident to her supervisor. Two days later, while both Kratzer and Barrett were still attending the seminar, Mack and UAW investigated the incident. As a result of the investigation, Kratzer resigned his position with UAW.

After returning home, Barrett sought psychological help. She was diagnosed with post traumatic stress disorder and experienced suicidal tendencies. Barrett subsequently resigned from Mack and filed a lawsuit against Mack, UAW, and Kratzer. State Farm defended Kratzer under a reservation of rights while pursuing this declaratory judgment action.

Upon hearing this matter, the trial court concluded the State Farm policy did not provide coverage for Barrett's claims against Kratzer. Specifically, the trial court found there had been no accidental occurrence or bodily injury to trigger coverage. Additionally, the trial court found the "intentional injury" and "business pursuits" exclusions barred coverage. The judge denied Barrett and Kratzer's post-trial motions. This appeal follows.

## STANDARD OF REVIEW

A declaratory judgment action is neither legal nor equitable, but is determined by the nature of the underlying issue. *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). An action to determine coverage under an insurance policy is an action at law. *See Travelers Indem. Co. v. Auto World of Orangeburg, Inc.*, 334 S.C. 137, 140, 511 S.E.2d 692, 694 (Ct.App.1999) (noting that an action to determine coverage under an automobile insurance policy is an action at law). In an action at law tried without a jury, the trial court's findings will not be disturbed on appeal unless the findings are found to be without evidence reasonably support-

ing them. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## DISCUSSION

## I. EXCLUSION OF DEPOSITION EXCERPTS

Barrett and Kratzer argue the trial court erred in excluding excerpts from Barrett's deposition when the excerpts were submitted in reply to those introduced by State Farm. We disagree.

 The admission or exclusion of evidence is a matter within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of that discretion. *Paschal v. Causey,* 309 S.C. 206, 210, 420 S.E.2d 863, 866 (Ct.App. 1992). Rule 32(a)(5), SCRCP, sets forth the proper procedure for admitting deposition excerpts. It states:

At least 1 day prior to offering excerpts from a deposition in the case in chief counsel, unless otherwise ordered by the trial judge, shall furnish to the trial judge and, at the same time and by the same means, furnish to all opposing counsel the excerpts from depositions ... and a list of deposition exhibits which counsel expects to introduce in the case in chief at trial. *When the deposition excerpt is offered at trial counsel for the adverse party shall furnish to the trial judge and, at the same time and by the same means, furnish to all opposing counsel any objections ... to opposing counsel's deposition excerpts and any additional excerpts from the depositions ... which counsel expects to be read pursuant to SCRCP(a)(4),* as well as a list of deposition exhibits to be used. With reasonable notice to the trial judge and all counsel, other excerpts may be read. (emphasis added).

Under our reading of this rule, the adverse party must provide a list of objections and additional excerpts expected to be introduced after opposing counsel *offers* its excerpts but *before* those excerpts are read into the record.[1] Any other

---

[1]. We note this procedure does not apply when using deposition testimony to impeach the testimony of a deponent as a witness. The use of a deposition for impeachment purposes is covered under Rule 32(a)(1), SCRCP.

construction of Rule 32(a)(5), SCRCP, renders the Rule's requirements for furnishing a list of objections and additional excerpts meaningless because, once opposing counsel reads his or her excerpts into evidence, any objections to the admissibility of those excerpts essentially becomes moot.

■ Moreover, because Rule 32(a)(5), SCRCP, explicitly addresses the proper method for admitting deposition excerpts, its requirements supersede other less specific rules regarding threshold requirements for using excerpts of deposition testimony. *Cf. Byrd v. Irmo High School,* 321 S.C. 426, 435, 468 S.E.2d 861, 866 (1996) (stating the general rule of statutory construction that a specific statute prevails over a more general one). Therefore, Barrett and Kratzer's argument that their tendered excerpts would be admitted under Rule 32(a)(4), SCRCP, or Rule 106, SCRE, is without merit in light of the specific requirements of Rule 32(a)(5), SCRCP.

In the present case, prior to trial and pursuant to Rule 32(a)(5), SCRCP, State Farm identified the excerpts from Barrett's deposition it intended to introduce during State Farm's case in chief. Neither Barrett nor Kratzer furnished State Farm with any objections. Similarly, Barrett and Kratzer failed to identify any additional excerpts they expected to introduce in reply until after State Farm read its designated excerpts into the record.

Therefore, Barrett and Kratzer failed to comply with the notice requirements of Rule 32(a)(5), SCRCP, and the trial court's decision to exclude their excerpts offered in reply is affirmed.

Moreover, our review of the deposition excerpts proffered by Barrett and Kratzer indicate that, even if the excerpts had been admitted, they would not have changed the disposition in this case. Finally, we refuse to create an exception to the technical result reached by the trial court when it was Barrett's failure to appear at trial that created her predicament.

## II. DUTY OF STATE FARM TO PROVIDE COVERAGE

Barrett and Kratzer contend the trial court erred in determining State Farm had no duty to defend or indemnify

Kratzer for the claims brought by Barrett.[2] We disagree.

### A.

Barrett and Kratzer first argue the trial court erred in determining Barrett did not suffer from an accidental occurrence as defined under the policy. It is well settled in South Carolina that provisions of an insurance policy are to be liberally construed in favor of the insured. *State Auto Prop. and Cas. Co. v. Brannon*, 310 S.C. 388, 391, 426 S.E.2d 810, 811 (Ct.App.1992). Where the words of an insurance policy are capable of two reasonable interpretations, the interpretation most favorable to the insured will be adopted. *Quinn v. State Farm Mut. Auto. Ins. Co.*, 238 S.C. 301, 304, 120 S.E.2d 15, 16 (1961). We should not, however, torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties. *Auto Owners Ins. Co. v. Langford*, 330 S.C. 578, 584, 500 S.E.2d 496, 499 (Ct.App. 1998). If there is no ambiguity, the insurance policy's terms must be interpreted and enforced according to their plain, ordinary, and popular meaning. *South Carolina Ins. Co. v. White*, 301 S.C. 133, 137, 390 S.E.2d 471, 474 (Ct.App.1990).

The homeowner's policy issued to Kratzer provides liability coverage for "bodily injury" or "property damage" caused by an "occurrence." The policy defines "occurrence" as an "accident" which results in a covered bodily injury. The policy does not specifically define the term "accident."

When a policy does not specifically define a term, the term should be defined according to the usual understanding of the term's significance to the ordinary person. *See Manufacturers and Merchants Mut. Ins. Co. v. Harvey*, 330 S.C. 152, 158, 498 S.E.2d 222, 225 (Ct.App.1998). The supreme court has interpreted "accident" to mean "[a]n effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and cannot be charged with the design of producing." *Goethe v. New York Life Ins. Co.*,

---

**2.** Barrett and Kratzer begin their argument with a general assertion that the trial court improperly applied the rules of construction applicable to insurance contracts. These arguments are implicitly addressed within our discussion of the specific contentions on appeal.

183 S.C. 199, 217, 190 S.E. 451, 458 (1937) (internal citation omitted), *cited in Harvey*, 330 S.C. at 159, 498 S.E.2d at 225; *but see Green v. United Ins. Co. of Am.*, 254 S.C. 202, 206, 174 S.E.2d 400, 402 (1970) (defining "accident" as "[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt."). In short, "an intended injury cannot be accidental." *Harvey*, 330 S.C. at 159, 498 S.E.2d at 225.

Barrett and Kratzer contend there is no evidence that Kratzer intended to harm Barrett, or that Barrett intended to suffer injury, and therefore Barrett's injuries resulted from an accidental occurrence. This court addressed a similar issue in *Manufacturers and Merchants Mut. Ins. Co. v. Harvey*, 330 S.C. 152, 498 S.E.2d 222 (Ct.App.1998).

In *Harvey*, the appellants argued the medical evidence submitted at trial established that Harvey did not intend the sexual abuse to be harmful and therefore, his sexual abuse could constitute an occurrence. *Id.* at 159, 498 S.E.2d at 225. In rejecting that argument, this court adopted the majority rule and held, as a matter of law, an intent to harm is inferred when adults sexually assault children. *Id.* at 159, 498 S.E.2d at 226. Accordingly, under policy language similar to the policy at issue here, this court held that the sexual molestation of a child was not a covered accidental occurrence. *Id.* at 161, 498 S.E.2d at 227.

Although the present case deals with sexual misconduct towards an adult, rather than towards a child, we find the analysis in *Harvey* instructive. Furthermore, several other jurisdictions have found that sexual misconduct towards an adult does not constitute an accidental occurrence. *See, e.g., State Farm Fire and Cas. Co. v. Compupay, Inc.*, 654 So.2d 944, 947 (Fla.Dist.Ct.App.1995) ("It can be reasoned that an act of discrimination or harassment, like an act of sexual abuse, has but one end: to harm the victim."); *Commercial Union Ins. Co. v. Sky, Inc.*, 810 F.Supp. 249, 253 (W.D.Ark. 1992) ("[I]t strains the imagination to speculate how a pattern of sexual overtures and touching can be 'accidental.' "); *Old Republic Ins. Co. v. Comprehensive Health Care Assocs., Inc.*, 786 F.Supp. 629, 632–3 (N.D.Tex.1992) (holding an insurer had

no duty to defend a complaint alleging various causes of action arising out of alleged sexual harassment because intentional acts are not "occurrences" as the term is commonly defined in insurance policies); *Greenman v. Michigan Mut. Ins. Co.,* 173 Mich.App. 88, 433 N.W.2d 346, 349 (1988) (construing a homeowner's policy and finding the insured's sexual harassment of a co-worker not covered because, among other reasons, the insured's intentional acts could not be deemed an accidental occurrence).

Based on the reasoning in *Harvey* and the above authorities, we hold that an intent to harm will be inferred as a matter of law when a person sexually assaults, harasses, or otherwise engages in sexual misconduct towards an adult. Kratzer's alleged speech and conduct towards Barrett inescapably leads to the conclusion that Kratzer's actions were intentional. Therefore, there is no coverage for these alleged actions under State Farm's policy because there has been no accidental occurrence.

## B.

Barrett and Kratzer also contend the amended complaint contained causes of action that sound in negligence and, therefore, the trial court erred in concluding they failed to allege an accidental occurrence. We disagree.

The determination of whether an insurance company is obligated to defend an action under its policy provisions is based on the allegations of the complaint. *R.A. Earnhardt Textile Mach. Div., Inc. v. South Carolina Ins. Co.,* 277 S.C. 88, 90, 282 S.E.2d 856, 857 (1981). If the facts alleged in the complaint fail to bring the case within the policy's coverage, the insurer has no obligation to defend. *Id.*

In her amended complaint, Barrett asserted causes of action against Kratzer for (1) outrage/intentional infliction of emotional distress, (2) false imprisonment, (3) assault, (4) battery, and (5) invasion of privacy. All five alleged causes of action are generally considered intentional torts and therefore the complaint does not allege an accidental occurrence. *See Gattison v. South Carolina State College,* 318 S.C. 148, 151, 456

S.E.2d 414, 416 (Ct.App.1995) (listing the elements for intentional infliction of emotional distress); *Jones v. Winn–Dixie Greenville, Inc.*, 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct. App.1995) (listing the elements for false imprisonment); *Prior v. South Carolina Med. Malpractice Liab. Ins.*, 305 S.C. 247, 249, 407 S.E.2d 655, 657 (Ct.App.1991) (stating that sexual assault is an intentional tort); *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 171–2, 383 S.E.2d 2, 5–6 (Ct.App.1989) (distinguishing the three types of invasion of privacy and listing their elements).

Furthermore, Barrett and Kratzer's contention that Barrett's complaint asserts causes of action for both intentional torts and negligence is unavailing because, "in the context of a cause of action alleging an intentional tort, which by definition cannot be committed in a negligent manner, the allegation of negligence is surplusage." *USAA Property and Cas. Ins. Co. v. Rowland,* 312 S.C. 536, 540, 435 S.E.2d 879, 882 (Ct.App.1993) (quoting *Eberdt v. St. Paul Fire and Marine Ins. Co.*, 36 Or.App. 679, 585 P.2d 711, 713 (1978)). Although South Carolina allows alternative pleading, a party may not invoke coverage by couching intentional acts in negligence terms. *Harvey*, 330 S.C. at 162, 498 S.E.2d at 227, (citing *South Carolina Med. Malpractice Liab. Ins. v. Ferry*, 291 S.C. 460, 354 S.E.2d 378 (1987)). Therefore, Barrett's use of the word negligence in her complaint neither extended coverage nor obligated State Farm to defend Kratzer.

We find the policy does not provide coverage because Kratzer's actions did not amount to an "occurrence" as defined in the policy; therefore, we do not address Barrett and Kratzer's remaining contentions. For the foregoing reasons, the decision of the trial court is

**AFFIRMED.**

HEARN, C.J., STILWELL, J., and MOREHEAD, Acting J., concur.